CHARLES J. SCHUCK, Judge.
On August 22,1939, the claimant company, through its train crew, placed on a siding or switch at Lookout, Fayette county, two certain cars loaded with material consigned to the state road commission; one of which cars was provided with what is commonly termed a stemVjbrake; while the other was provided with what is known as the ajax brake. The evidence shows that in order to expedite the unloading of the cars, they had to be placed at a certain point over a pit which allowed the unloading to the best advantage; that the first of these cars, or the-one equipped with the stem brake, was placed at this par *56 ticular point, and that after it was unloaded it was moved a sufficient distance along the said spur or switch in order that the second car could he properly placed for unloading purposes. It was while this second car was being placed for this purpose by an employee of the state road commission that the said second car got out of the control of the said employee, collided with the first car, which had been moved and unloaded, and caused the damage complained of by the railroad company.
Several questions, of course, are involved, both of law and fact; andj the first of these is the question of the duty of 'the common carrier in making delivery of the cars to the consignee.
A careful consideration of the adjudicated cases, as well as the text of law writers on the subject, tend to hold that where a carrier is not required or expected to remove the freight from cars, as in the case of grain in bulk, coal, lumber, and so forth, delivery of the car in a safe and convenient position for unloading, either at a warehouse, elevator, or other place designated by the contract, or where no place of delivery is thus designated or fixed, on its sidetrack in the usual and customary place for unloading by consignees, and it is found that the brakes and appliances when properly used are sufficient and safe, then the carrier has discharged its full duty to the consignee so far as the delivery and unloading of the car is concerned, unless there is a contract to the contrary which enlarges the duties of the carrier, but which does not concern us so far as this claim is concerned, since there is no contract to that effect in the evidence. Michie on carriers, vol. 1, sec. 845, p. 530; Corpus Juris, vol. 10, sec. 326, p. 233, and also sec. 364, p. 253.
Such delivery places the cars under the dominion of the consignee, and it then becomes the duty of the consignee to have persons of proper skill and care to handle the cars to replace them for unloading purposes, if it is found that the cars are to be moved to a more advantageous place on the switch previous to unloading; and if, by reason of the lack of skill and care, the *57 cars in question are injured or damaged then the consignee is responsible to the carrier for such damages.
We adopt this view of the law in its application to the circumstances surrounding the claim presented. The conductor and brakeman that placed the car in question both testify that the brakes were in good order, and that the car was securely placed and held when the brakes were properly set. This testimony is further supported by the member of the train crew that moved the cars after the collision complained of, and found that the brakes were in perfect order. The mechanic of the railroad company who made the repairs likewise testifies that the brakes were in perfect order when tested by him previous to making the repairs. The trainmaster of the claimant company testifies among other matters that this particular car on which the employee of the road commission lost control was equipped with the ajax brake, the most modern used by railroad companies on freight cars, and a brake that has never been known to jam or cause trouble.
That the cars were properly and securely set on the said switch is sustained by the testimony of the state road bom-mission employee who tried to replace the car in question for unloading purposes, when he stated that they were obliged to use a pinch bar after the cars had been uncoupled and before the car in question could be moved to the desired place, and that the pinch bar was used on this car on which the state road commission alleges the brakes were defective (record p. 63).
"Was the state road employee who was seeking to properly place the car in question qualified to do the work; did he have sufficient skill to do the work he was called upon to perform in replacing the car for unloading purposes? We do not think so. It seems that he had been selected because of the fact that he had been employed for a goodly number of years on what is commonly termed as a road gang of the railroad company, and that while his duties were those of a laborer, and did not include the handling or placing of any cars for unloading purposes, that nevertheless he had moved cars on several occa *58 sions. This statement is contradicted by the claimant’s train-master, who states, among other things, that when cars are involved and are to be unloaded for track maintenance purposes, that á train crew is always present for the purpose of placing the cars to be unloaded. The state road employee had never been a brakeman nor employed in a position that would give him the necessary experience so far as his connection with the railroad was concerned.
The extent to which the brake is released, the distance the car is to travel in being replaced, the time necessary to rewind the brake to stop the car at the place desired, or to “spot” it, to use a railroad term, are all elements entering into the proper and safe handling of a car, and of necessity require experience and a certain degree of skill to successfully complete the operation of placing or replacing the car.
Under all the circumstances and the evidence in-the case, we conclude that the claimant company is entitled to an award of one hundred fourteen dollars and thirty-five cents ($114.35), and herewith recommend that the Legislature at its next session shall make an appropriation accordingly, upon the execution of a release by the claimant company to the state or the state road commission, in full satisfaction of all damages claimed by reason of the damages to it, occasioned by the occurrence or accident which has been made the basis of this claim.